**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **WORLD WIDE SALES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 08 C 1198** |
| | ) | |
| **CHURCH & DWIGHT CO., INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY,  District Judge:

World Wide Sales, Inc. has sued Church & Dwight Co., Inc. for its use of the

mark Fridge Fresh to describe a refrigerator deodorizing product, in alleged

infringement of World Wide's Forever Fresh for the Fridge mark for a similar product.

World Wide claims: (1) trademark infringement under the Lanham Act, 15 U.S.C. §

1114(1); (2) unfair competition, passing off, false advertising, and false designation of

origin under the Lanham Act, 15 U.S.C. § 1125(a); and (3) fraud on the United States

Patent and Trademark Office (PTO) sufficient to justify cancellation of Church &

Dwight's Fridge Fresh mark.  Church & Dwight asserted an affirmative defense of

laches and has counterclaimed, asserting that the registration of World Wide's Forever

Fresh for the Fridge mark contains a clerical error and should be modified to reflect that

World Wide has disclaimed exclusive use of the words Fresh and Fridge.  Church &

Dwight has moved for summary judgment on all of World Wide's claims.  For the following reasons, the Court grants the motion.

**Facts**

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party."  *Harney v. Speedway SuperAmerica, LLC*, 556 F.3d 1099, 1104 (7th Cir. 2009).  The Court takes the following facts from the plaintiff's complaint and from the parties' statements of facts as to which there is no material dispute.

World Wide is a Michigan corporation operating out of the home of Norman and Carolyn Shy that has been in the business of selling a variety of odor neutralizing products since 2002.  Its products all consist of pouches of minerals that absorb odors from the air.  The products include a general-use product called Forever Fresh Odor Eliminator, a product pitched to pet owners called Forever Fresh Pet Odor Eliminator, and the subject of this lawsuit, a product designed for use in refrigerators called Forever Fresh for the Fridge.  The latter product consists of two pouches of minerals, zeolite and potassium permanganate, which are intended to deodorize foods and help keep them fresh.

From 2002 to 2008, World Wide reported a total of $455,282 in sales from all of its products, though it is uncertain how much of this represents sales of the Forever Fresh for the Fridge product.  In the same period, World Wide spent $679,510 on advertising for all of its products, with the bulk of advertising expenditures occurring in 2003.  World Wide has reported a loss on its federal tax returns every year since it was

founded in 2000.  Total losses reported from 2002 to 2008 were $928,926.  No new

Forever Fresh for the Fridge product has been manufactured since 2006, but World

Wide continues to sell the product on-line and through a limited number of retail stores.

On August 30, 2002, World Wide filed an application with the PTO to register

Forever Fresh for the Fridge (stylized) as a trademark.  On February 19, 2003, the PTO

issued an office action, stating among other things that World Wide "must disclaim the

descriptive wording 'Fresh' and 'for the Fridge.'"  On March 13, 2003, World Wide filed

a response to the office action, stating that "no claim is made to the exclusive right to

use the words 'fresh' and 'for the fridge' . . . apart from the mark as shown."  The PTO

issued a registration for the Forever Fresh for the Fridge (stylized) mark on March 2,

2004.  The registration certificate does not reflect any disclaimer of the words "fresh" or

"for the fridge."

Defendant Church & Dwight is the country's leading producer of baking soda

products, which it sells under the brand Arm & Hammer.  Church & Dwight's line of

products includes a range of personal care, household, and specialty products sold

under the Arm & Hammer trademark and logo.  Church & Dwight has sold such

products since the 1860s, and in the past two decades it has spent half a billion dollars

advertising and promoting the Arm & Hammer brand.  Arm & Hammer enjoys a ninety-

five percent brand awareness among American consumers.

For at least eighty years, Church & Dwight has used a trade dress for baking

soda products consisting of concentric circles surrounded by a yellow-orange color.

Church & Dwight owns federal trademark registrations for Arm & Hammer and the

concentric circle and yellow-orange trade dress.

Consumers have long used baking soda to remove odors from the air in refrigerators, and Church & Dwight has encouraged this use through its promotional materials for decades.  Beginning in 2004 or 2005, Church & Dwight began developing a specialized refrigerator air deodorizing product.  The product features a plastic casing filled with baking soda with a suction cup on the back that allows the product to be stuck to any surface of the refrigerator to save space.  The product also includes a replacement indicator to notify consumers when a new unit is recommended.

Church & Dwight conducted market research, including the use of consumer focus groups, to select a name for this new product.  An outside firm hired by Church & Dwight proposed the name Fridge Fresh as well as several other names.  Church & Dwight conducted testing for the suggested names in November 2005, and based on the results of those tests it selected Fridge Fresh. The outside firm ran a cursory name search for Fridge Fresh in or around January 2005 and recommended that Church & Dwight conduct a full trademark search, which Church & Dwight did at least three times in 2005.  These trademark searches returned World Wide's Forever Fresh for the Fridge registration as well as the registration of several other products whose marks include variations on the words "fresh" and "fridge."

In January 2006, Church & Dwight filed two federal trademark applications, one for Fridge Fresh and one for Arm & Hammer Fridge Fresh and a design.  The latter features the Arm & Hammer logo and the words Fridge Fresh in block letters in italics. In May 2006, Church & Dwight launched its Fridge Fresh product.  Fridge Fresh is sold primarily in grocery stores and mass market retailers and is often displayed near the baking soda in the baking aisle of grocery stores.  The Fridge Fresh product had over

4

$5 million in sales in 2007, and Church & Dwight spent over $5 million marketing the product that year.

On November 1, 2006, World Wide sent Church & Dwight a letter claiming that confusion was likely between World Wide's Forever Fresh for the Fridge mark and Church & Dwight's Fridge Fresh mark and demanding that Church & Dwight stop using the mark. On November 14, 2006, Church & Dwight replied to World Wide's letter, explaining why it thought confusion was unlikely, and stating that it would not stop using the Fridge Fresh mark. World Wide never responded to the letter.

On January 9, 2007, Church & Dwight's application to register the trademark Fridge Fresh was published for opposition in the Official Gazette of the PTO. No one opposed the application. On October 16, 2007, the PTO issued to Church & Dwight a registration for the Fridge Fresh mark.

In February 2008, World Wide filed this lawsuit, claiming trademark infringement, unfair competition, and fraud on the PTO by Church & Dwight. Church & Dwight asserted the affirmative defense of laches and filed a counterclaim contending that World Wide's trademark registration in Forever Fresh for the Fridge was erroneously issued without the intended disclaimer of the words "fresh" and "for the fridge." Church & Dwight has moved for summary judgment on World Wide's claims and on its affirmative defense of laches.

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

5

Civ. P. 56©.  To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002).  A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

## A.   Lanham Act claims (Counts 1 and 2)

To prevail on a claim of trademark infringement under the Lanham Act, World Wide must show that its mark is protectable and that Church & Dwight's use of the mark is likely to cause confusion among consumers.  *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001).  To prevail on its claim of unfair competition, World Wide must show that Church & Dwight used "any word, term, name, symbol, or device . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the . . . origin, sponsorship, or approval of [its] goods."  15 U.S.C. § 1125(a)(1)(A).  World Wide contends, and Church & Dwight has conceded for purposes of summary judgment, that World Wide's Forever Fresh for the Fridge (stylized) mark is protectable.[1]  Def's Mot. at 11 n.3.  The parties part ways in their assessment of the "keystone" of trademark infringement cases:  the likelihood of confusion as to the source, affiliation, connection

---

[1]The parties disagree about whether World Wide disclaimed right to exclusive use of the words "forever" and/or "fresh" in its trademark application.  Because Church & Dwight does not directly challenge the protectability of the mark, the Court does not address the issue of whether the potential disclaimer of the words "fresh" and "fridge" in the mark renders World Wide's mark unprotectable as to those words.

or sponsorship of goods or services.  *See Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 957 (7th Cir. 1992).

The issue of likelihood of confusion is ultimately a question of fact, but a court may grant summary judgment if it concludes that no reasonable fact finder could determine that there was a likelihood of confusion.  *Packman*, 267 F.3d at 637.  To determine whether a likelihood of confusion exists, the Court considers seven factors: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to "palm off" his product as that of another.  *Id.* at 643.  No single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented.  *Id.*

In this case, World Wide relies on a theory of "reverse confusion," which occurs "when a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user."  *Sands, Taylor & Wood*, 978 F.2d at 957.  This is a cognizable theory of trademark infringement in this Circuit.  *Id*. at 958.  If "the public comes to assume that the senior user's products are really the junior user's, or that the former has become somehow connected to the latter[,] the result is that the senior user loses the value of the trademark - its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets."  *Id.* at 957.  In considering reverse confusion cases, courts apply the same factors in assessing

likelihood of confusion, though which factors are most important may differ.  *See, e.g.,*

*Freedom Card, Inc. v. JPMorgan Chase & Co*, 432 F.3d 463, 472 (3rd Cir. 2005).

    1.    *Degree of similarity*

To assess the degree of similarity between World Wide and Church & Dwight's

marks, the Court compares the marks to assess whether they are confusingly similar.

Courts must compare the marks "in light of what happens in the marketplace, and not

merely by looking at the two marks side by side."  *Packman*, 267 F.3d at 643.  The

ultimate focus of this inquiry is on "whether the buying public thinks or expects the

products to come from the same source."  *Sullivan v. CBS Corp.*, 385 F.3d 772, 778

(7th Cir. 2004).  In evaluating the similarity of the marks, the Court may consider the

products' visual characteristics, because "[d]ifferent packaging, coloring, and labeling

can be significant factors in determining whether there is a likelihood of confusion."

*Packman*, 267 F.3d at 644.

This is not a case of identical marks but rather one in which the parties' marks

include some of the same words.  The product packaging is depicted in the Appendix to

this decision.  Though both marks include the words "Fridge" and "Fresh," the

"appearance and placement of the words are distinct such that a consumer would not

associate one with the other."  *Packman,* 267 F.3d at 642.  World Wide's mark, as it

appears on the product, consists of the word "forever" in medium sized letters above

the word "fresh" in large letters, and beneath that the phrase "for the fridge" written on

one line in small block letters.  Beneath that is a Spanish translation of "for the fridge"

reading "*Para el Refrigerador.*"  The most prominent words in the mark are "forever

fresh," which are displayed in the same way these words appear on all of World Wide's products.  Forever Fresh for the Fridge is sold in a box the shape of an elongated deck of playing cards, which features the mark as described, plus two side-by-side pictures of food labeled "with" and "without," illustrating the product's freshening properties.  In addition to the photos, the box is decorated with rectangles of various colors in a geometric pattern.

Church & Dwight's product features the word "Fridge" written in black letters above the word "Fresh" written in large block letters in white with a black outline.  The product is sold in a blister pack with a cardboard backing and a clear plastic casing through which the product is visible.  The cardboard backing is the same yellow-orange color as other Arm & Hammer products.  Perhaps most importantly, the product features the familiar Arm & Hammer logo prominently displayed above the words "Fridge Fresh."  The appearance of Arm & Hammer's well-known, famous house mark is likely to reduce or eliminate any likelihood of confusion.  *Blue Cross and Blue Shield Ass'n v. American Express Co.,* No. 99 C -6679, 1999 WL 1044825, at *4 (N.D. Ill. Nov. 16, 1999).

World Wide does not contest that the appearance of the products is substantially different and that Church & Dwight's product is packaged in a way that is consistent with its branding for other Arm & Hammer products, including the use of the yellow-orange color and the familiar Arm & Hammer logo.  *See* Def.'s LR 56.1 Stat. ¶ 54, to which World Wide offered no response.  Based on an examination of the marks and the products' appearance, it is extraordinarily unlikely that a purchaser, however careless, would confuse the two products or mistake either as being produced by the other entity,

despite the fact that both employ the use of the words "fridge" and "fresh."  This factor

weighs strongly in favor of Church & Dwight.

  2. *Similarity of the parties' products*

  In assessing the similarity of the parties' products, the inquiry is "whether the

parties' products are the kind the public might very well attribute to a single source . . . ."

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 463 (7th Cir. 2000) (internal

citations omitted).

  There is no dispute that both World Wide and Church & Dwight sell pouches of

dry powder designed to remove odors from the refrigerator.  But the mere fact that the

products are similar does not suggest likelihood of confusion, and even "exploiting the

good will of the article - the attractive features, of whatever nature, that the product

holds for consumers - is robust competition; only deceiving consumers, or exploiting the

goodwill of another producer, is unfair competition."  *Dorr-Oliver Inc. v. Fluid-Quip, Inc.,*

94 F.3d 376, 383 (7th Cir. 1996).  Both products serve a similar purpose - refrigerator

deodorization - but they are presented very differently.  A reasonable consumer, even

taking into account the products' use of two common words, would not likely attribute

these products to a single source - in fact, given the fact that they serve the same

purpose and are presented so differently, the only reasonable conclusion a consumer

could draw is that they are similar products put forth by competing producers.

  3. *Area and manner of concurrent use*

  "The third factor in the likelihood of confusion analysis assesses whether there is

a relationship in use, promotion, distribution, or sales between the goods and services

of the parties."  *CAE Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 681 (7th Cir. 2001).  As

the Court has already discussed, the use of the parties' products is similar.  World Wide

advertised its product primarily through print advertisements in magazines and one

"infomercial"-type commercial spot, which now runs on its website.  World Wide has

spent less than $1000 on advertising since 2006.  Church & Dwight has engaged in a

nationwide media advertising campaign for its product, including print media.  Both

parties have advertised in magazines, and the use of similar methods of promotion

does tend to increase the likelihood of consumer confusion.

The parties' distribution and sales for their products diverge widely.  The record

indicates that the products are sold in different stores:  World Wide's product is sold

primarily online and through a few retailers, though how many stores and which ones is

not clear from the record.  Church & Dwight's product is sold in grocery stores and

mass market retailers.  World Wide does not offer a single instance where the two

products were even for sale in the same store, nor does it indicate that the products

were ever advertised in the same magazine.  To the extent that this factor favors World

Wide, it does so only slightly.

4.    *Degree of care used by consumers*

The parties vigorously disagree about the level of care employed by consumers

when purchasing refrigerator deodorizing products.  In general, courts have held that

"[t]he more widely accessible and inexpensive the products and services, the more

likely that consumers will exercise a lesser degree of care and discrimination in their

purchases."  *CAE, Inc.,* 267 F.3d at 683.  World Wide states that both products are sold

at a low price, suggesting a low degree of care.  World Wide also notes that Church &

Dwight strategically places its Fridge Fresh product near its other baking soda products

11

in the baking aisle, to encourage consumers to spontaneously buy the new product. World Wide cites this purposeful encouragement of spontaneous purchases as evidence of a low level of consumer care.  Church & Dwight, on the other hand, characterizes purchases of baking soda as "planned purchases" and cites research indicating that consumers do not go into the baking aisle of supermarkets unless they are planning to purchase a product.  Mot. for Summ. Judg. at 19.  Thus, Church & Dwight argues, placement of the Fridge Fresh product next to the baking soda in the baking aisle suggests that the product will be purchased only by those consumers who have already planned to purchase a baking soda product, raising the level of consumer care above that which low-priced products typically enjoy.

The Court tends to agree with World Wide that purchases of low-cost refrigerator deodorizers are not likely to be all that meticulous in their selection, which weighs in favor of likelihood of confusion.  Because the products appear so different, however, it seems unlikely that even a hurried casual consumer would mistake Church & Dwight's Fridge Fresh for a product produced by World Wide, or vice versa.

5.  *Strength of mark*

"[T]he term 'strength' as applied to trademarks refers to the distinctiveness of the mark, or more precisely, its tendency to identify the good sold under the mark as emanating from a particular source."  *Sands, Taylor & Wood*, 978 F.2d at 959. Trademarks may be classified into five categories, in ascending order of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful.  *CAE*, 267 F.3d at 684.

Church & Dwight argues that World Wide's mark is "descriptive" and thus weak and entitled to little protection.  The Forever Fresh for the Fridge mark does "impart information directly," and it "refers to a characteristic of the product."  *Sands, Taylor & Wood*, 978 F.2d at 952.  The mark is properly classified as descriptive, as opposed to suggestive, which requires that the mark "stand[] for an idea which requires some operation of the imagination to connect it with the goods."  *Id.*  Descriptive marks are relatively weak, which weighs against a likelihood of confusion.

World Wide's small advertising budget, small sales of its products, and multi-year losses (instead of profits) are further evidence of the relative weakness of the mark.  *See Nora Beverages, Inc., v. Perrier Group of Amer., Inc.*, 269 F.3d 114, 123 (7th Cir. 2001).  This factor weighs in favor of Church & Dwight.

6. *Actual confusion*

"Evidence of actual confusion, if available, is entitled to substantial weight in the likelihood of confusion analysis, [but] this evidence is not required to prove that a likelihood of confusion exists."  *CAE*, 267 F.3d at 685.  World Wide offers no evidence of actual consumer confusion regarding the source of its products or Church & Dwight's products.  This alone does not defeat World Wide's claim, but the lack of evidence of actual confusion weighs in favor of Church & Dwight.

7. *Church & Dwight's intent*

Typically, courts in trademark infringement cases treat the defendant's intent to "palm off" its goods as those of another as one of the most important factors in the likelihood of confusion analysis.  *CAE,* 267 F.3d at 678.  In reverse confusion cases

13

such as this one, however, where "a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user . . . the junior user does not seek to profit from the good will associated with the senior user's mark." *Sands, Taylor & Wood*, 978 F.2d at 957.  Thus, "the 'intent' factor of the likelihood of confusion analysis is essentially irrelevant in a reverse confusion case."  *Id.* at 961.

       8.    *Balancing the factors*

       The Seventh Circuit has held that "none of the seven confusion factors alone is dispositive in a likelihood of confusion analysis," and it has rejected the idea that to prevail on a motion for summary judgment, a defendant must demonstrate that there is no genuine issue of material fact as to *any* of the seven factors.  *AHP Subsidiary Holding Co. v. Stuart Hale Co.,* 1 F.3d 611, 616 (7th Cir. 1993).  Rather, if a court finds that the evidence is so one-sided that no reasonable fact finder could find a likelihood of confusion, summary judgment is appropriate.  *Door Sys. Inc. v. Pro-Line Door Sys. Inc.*, 83 F.3d 169, 173 (7th Cir. 1996).  In fact, as the Seventh Circuit has stated, "[a] list of factors designed as *proxies* for the likelihood of confusion can't supersede the statutory inquiry.  If we know for sure that consumers are not confused about a product's origin, there is no need to consult even a single proxy."  *Top Tobacco, L.P. v. N. Atl. Operating Co., Inc.,* 509 F.3d 380, 383 (7th Cir. 2007) (emphasis in original).

       Taken as a whole, and particularly given the substantial and obvious differences between the parties' marks in wording, design, and packaging, as well as the weakness of World Wide's mark, the Court concludes that no reasonable fact finder could conclude that there was a likelihood of confusion as to the source of the parties'

14

products.  The Court therefore grants summary judgment in favor of Church & Dwight on World Wide's trademark infringement and unfair competition claims, Counts 1 and 2 of the complaint.

**B.    Fraud against the Trademark Office (Count 3)**

It its third claim, World Wide seeks to cancel Church & Dwight's federal trademark registration of Fridge Fresh on the ground that Church & Dwight was required to, but did not, notify the PTO of World Wide's registration of Forever Fresh for the Fridge when it applied for registration of its Fridge Fresh mark.  To prevail on such a claim, "[f]raud must be shown by clear and convincing evidence," and it will "be deemed only to exist when there is a deliberate attempt to mislead the Patent Office into registering the mark."  *Money Store v. Harriscorp Fin., Inc.,* 689 F.2d 666, 670 (7th Cir. 1982).

The Lanham Act requires an applicant seeking registration based on a bona fide intention to use a trademark to state "that, to the best of the verifier's knowledge and belief, no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1051(b)(3)(D).  The Court assumes this is the statute upon which World Wide relies, though it does not cite the statute or any other authority.

The parties do not dispute that Church & Dwight was aware of World Wide's Forever Fresh for the Fridge mark at the time that it applied for a mark for Fridge Fresh, nor do they disagree that World Wide and Church & Dwight's marks are in the same

15

industry and for the same type of product.  World Wide contends that Church &

Dwight's failure to advise the PTO of World Wide's mark amounts to fraud.

The Court disagrees.  No reasonable fact finder could determine that Church &

Dwight lacked good reason to believe that no one - specifically World Wide - had the

right to use the mark that Church & Dwight was applying to register, and no reasonable

fact finder could find otherwise.  As explained more thoroughly above, the Fridge Fresh

mark is not identical to World Wide's mark, nor is it "in such near resemblance" to

World Wide's mark "as to be likely . . . to cause confusion."  *Id.*

Further, Church & Dwight has submitted evidence that in connection with World

Wide's original application for the Forever Fresh for the Fridge mark, the PTO

instructed World Wide that it had to disclaim exclusive use of the words "fridge" and

"fresh."  Under the circumstances, no reasonable fact finder could find that Church &

Dwight did not reasonably believe that "fridge" and "fresh" were unprotected words in

connection with its trademark application.

In its response to Church & Dwight's motion for summary judgment, World Wide

contends that fraud occurred when Church & Dwight stated in its application that it

intended to use the mark starting in 2006, even though Church & Dwight had in fact

briefly used Fridge Fresh on a product sold in Great Britain in the late 1980s.  Section

1051(b)(3), however, which governs applications for trademark based on intent to use,

does not require an applicant to state the date of first use.  Church & Dwight's

statement in applying for the registration does not make any mention of the date of its

initial use, let alone a false statement in this regard.  This argument gets World Wide no

closer to proving fraud.

16

Proving fraud on the PTO requires "clear and convincing evidence of "a deliberate attempt to mislead." *Money Store,* 689 F.2d at 670.  World Wide has failed to provide any evidence from which a reasonable jury could find that there was such a deliberate attempt.  The Court therefore grants summary judgment in favor of Church & Dwight.

## C.     Laches and correction of trademark register

Church & Dwight has offered an affirmative defense of laches, claiming World Wide inexcusably delayed in bringing this suit and that Church & Dwight was prejudiced by the delay.  Because the Court has found no likelihood of confusion and no fraud on the Trademark Office, it need not address the issue of laches.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment as to each of plaintiff's claims [docket nos. 71 & 72].  The case is set for a status hearing on November 18, 2009 at 9:30 a.m. to address how the Court should proceed with regard to defendant's counterclaim seeking correction of plaintiff's trademark registration.  The Court also notes that far too much of the parties' summary judgment submissions were filed under seal.  At the status hearing, both sides should be prepared to identify which portions truly constitute trade secret or other appropriately confidential information and which portions should be filed in the public record.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 9, 2009

**APPENDIX**



